

22

1 | Richard M. Pachulski (CA Bar No. 90073)
Debra I. Grassgreen (CA Bar No. 169978)
2 | Pamela E. Singer (CA Bar No. 224758)
PACHULSKI STANG ZIEHL & JONES LLP
3 | 150 California Street, 15th Floor
San Francisco, California 94111-4500
4 | Telephone: 415/263-7000
Facsimile: 415/263-7010

5

6 | Attorneys for Dunmore Homes, Inc.,
Liquidation Trust

7

FILED

NOV - 3 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **EASTERN DISTRICT OF CALIFORNIA**

10 | **SACRAMENTO DIVISION**

11 | In re

12 | **DUNMORE HOMES, INC.,**

13 | Debtor.

14

15 | In re

16 | **DHI DEVELOPMENT aka DUNMORE**
**HOMES aka DUNMORE HOMES, LLC,**

17

18 | Debtor.

Case No.: 08-20569

Chapter 11

DCN PSZ-023

Case No. 08-24442

Chapter 7

DCN GJH-004

Date: October 7, 2008
Time: 2:30 p.m.
Place: Courtroom 33, 6th Floor
United States Bankruptcy Court
501 I Street
Sacramento, CA
Judge: Honorable Thomas C. Holman

RECEIVED
October 30, 2008
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
00001485727

103491.2

-1-

**ORDER GRANTING JOINT MOTION OF DUNMORE HOMES, INC. AND CHAPTER 7
TRUSTEE OF DHI DEVELOPMENT, INC. FOR AN ORDER APPROVING
SETTLEMENT AGREEMENT AND TOLLING AGREEMENT PURSUANT
TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

This matter came before the Court on October 7, 2008 at 2:30 p.m. in the above-captioned

cases to consider the *Joint Motion of Dunmore Homes, Inc. and Chapter 7 Trustee of DHI

Development, Inc. for an Order Approving Settlement Agreement and Tolling Agreement Pursuant

to Rule 9019 of the Federal Rules of Bankruptcy Proce*dure (the "Motion").[1] Pursuant to the

Motion, Dunmore Homes, Inc., which has been succeeded in interest by the Dunmore Homes Inc.

Liquidation Trust ("Dunmore Homes"), and Thomas Aceituno, in his capacity as the Chapter 7

Trustee (the "DHI Trustee"), sought approval of (i) a settlement agreement (the "Settlement

Agreement") by and between Dunmore Homes, Inc., the DHI Trustee, Sidney B. Dunmore, and

Sidney B. Dunmore, Trustee of the Sid Dunmore Trust, dated February 28, 2003, and (ii) a tolling

agreement (the "Tolling Agreement") by and between Dunmore Homes, the Official Committee of

Unsecured Creditors in Dunmore Homes' bankruptcy case, the DHI Trustee, and Sidney B.

Dunmore. Comerica Bank and Travelers Casualty and Surety Company of America ("Travelers")

objected (the "Oppositions") to the Motion. Taberna Capital Management, LLC filed a Statement of

Position with respect to the Motion. Dunmore Homes, the DHI Trustee, and Sidney B. Dunmore

filed replies (the "Replies") to the Oppositions.

Richard M. Pachulski, of Pachulski Stang Ziehl & Jones LLP, appeared on behalf of

Dunmore Homes. Gregory J. Hughes, of Hughes & Pritchard, LLP, appeared on behalf of the DHI

Trustee. Beth Ann Young, of Levene, Neale, Bender, Rankin & Brill, appeared on behalf of Sidney

Dunmore and the Sid Dunmore Trust. Geraldine A. Freeman, of Sheppard Mullin Richter &

Hampson LLP, appeared on behalf of Comerica Bank. Chad L. Schexnayder, of Jennings, Haug &

Cunningham, LLP, appeared on behalf of Travelers. Other appearances were noted on the record.

The Court has reviewed the Motion, the Oppositions, the Statement of Position, the Replies,

and all supporting declarations. The Court has also considered the arguments of counsel made at the

hearing on the Motion. Based on the foregoing, and for the reasons stated by the Court on the record

at the hearing, the Court finds that notice of the Motion was appropriate, the settlement embodied

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1   within the Settlement Agreement submitted with the Motion, and attached hereto as **Exhibit A**, is

2   reasonable and in the best interest of the Dunmore Homes and DHI estates; and that the Motion, the

3   Replies, and the supporting declarations establish that the settlement described in the Motion and as

4   set forth in the Settlement Agreement meets the Ninth Circuit's standards for approval of a

5   compromise and settlement. The moving parties have withdrawn without prejudice their request in

6   the Motion for approval of the Tolling Agreement.

7          **THEREFORE IT IS HEREBY:**

8          **ORDERED,** that the Motion is granted to the extent set forth herein; and it is further

9          **ORDERED,** that the Settlement Agreement attached as **Exhibit A** is approved and Dunmore

10  Homes and the DHI Trustee are authorized to enter into the Settlement Agreement; and it is further

11         **ORDERED,** that the parties to the Settlement Agreement are authorized to take any and all

12  necessary actions and to execute any and all necessary documents to effectuate and implement the

13  terms of the Settlement Agreement; and it is further

14         **ORDERED,** that all objections to the Motion, including the Oppositions, are overruled; and

15  it is further

16         **ORDERED,** that this Order is without prejudice to a subsequent motion to approve the

17  Tolling Agreement; and it is further

18         **ORDERED,** that the Settlement Agreement and this Order approving the Settlement

19  Agreement shall not be binding on anyone not a party to the Settlement Agreement with respect to

20  the nature, extent and priority of the lien rights in the tax refund subject of the Settlement

21  Agreement; and it is further

22         **ORDERED,** that this Court shall retain jurisdiction with respect to all matters arising from

23  or related to the implementation of this Order; and it is further

24  //

25  //

26  //

27  //

28  //

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1     **ORDERED**, that except to the extent so ordered, the Motion is denied.

2 Approved as to Form:

3 Sheppard, Mullin, Richter & Hampton LLP

4

5 By:       /s/ Jenny Y. Park Garner
        Jenny Y. Park Garner, Counsel for Creditor

6         Comerica Bank

7 Approved as to Form:

8 Jennings, Haug & Cunningham LLP

9

10 By: _____

11         Chad L. Schexnayder, Counsel for Creditor
        Travelers Casualty and Surety Company of
12         America

13

14

15

16

17

18 Dated:  **OCT 3 1 2008**

19               HONORABLE THOMAS C. HOLMAN
              UNITED STATES BANKRUPTCY JUDGE

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# <u>Exhibit A</u>

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is made and entered into as of September __, 2008 by and among (i) Dunmore Homes, Inc., a New York corporation, debtor and debtor in possession ("**Dunmore Homes**"), (ii) Thomas Aceituno as the Chapter 7 Trustee of DHI Development ("**DHI Trustee**"), (iii) Sidney B. Dunmore ("**Dunmore**"), and (iv) Sidney B. Dunmore, Trustee of the Sid Dunmore Trust, dated February 28, 2003 ("**Dunmore Trustee**"). Dunmore Homes, the DHI Trustee, Dunmore and the Dunmore Trustee are at times collectively referred to herein as the "Parties." Dunmore Homes and the DHI Trustee are at times referred to herein as the "Debtor Parties;" and Dunmore and the Dunmore Trustee are at times referred to herein as the "Dunmore Parties."

## RECITALS

This Agreement is made with respect to the following facts:

A.    WHEREAS, on November 8, 2007, Dunmore Homes filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**New York Bankruptcy Court**").

B.    WHEREAS, on December 14, 2007, the New York Bankruptcy Court found that venue was proper but transferred the case to the United States Bankruptcy Court for the Eastern District of California, Sacramento Division (the "**California Bankruptcy Court**").

C.    WHEREAS, on April 8, 2008, DHI Development ("**DHI**") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the California Bankruptcy Court. Thomas Aceituno was named as the Chapter 7 Trustee in the DHI bankruptcy case.

D.    WHEREAS, on August 12, 2008, the California Bankruptcy Court considered confirmation of Dunmore Homes' Second Amended Plan of Liquidation (the "**Plan**"), wherein, *inter alia*, Leon Szlezinger was designated as the Proposed Liquidation Trustee of Dunmore Homes.

E.    WHEREAS, on September 5, 2008, the California Bankruptcy Court entered its Order Confirming the Plan ("**Confirmation Order**"), pursuant to which, *inter alia*, Leon Szlezinger was appointed as the Liquidation Trustee of Dunmore Homes (the "Liquidation Trustee") as of the Effective Date of the Plan.

F.    WHEREAS, on or about June 7, 2005, Dunmore and DHI entered into a loan agreement and revolving credit note whereby DHI made available to Dunmore a line of credit in the amount of $20,000,000.00 (the "Loan").

G.    WHEREAS, after a portion of the Loan was advanced, Dunmore executed a security agreement in favor of DHI (the "**Security Agreement**") granting DHI a security interest in Dunmore's anticipated federal income tax refund for tax year 2007 (the "Refund").

H.    WHEREAS, on or about September 12, 2007, DHI recorded with the California Secretary of State a UCC-1 Financing Statement (the "**DHI Financing Statement**").

I.    WHEREAS, Dunmore Homes was formed on or about August 30, 2007, to acquire all of the assets of DHI. In September 2007, DHI sold all of its assets to Dunmore Homes, including DHI's right, title and interest in the Loan and the Security Agreement (the "Sale"). By the Sale, Dunmore Homes contends that the Loan and Security Agreement were transferred from DHI to Dunmore Homes.

J.     WHEREAS, on or about November 9, 2007, the Loan was further modified by the terms of the Debtor in Possession Financing Agreement in the Dunmore Homes' bankruptcy case, which was later approved by the New York Bankruptcy Court on or about December 26, 2007, when the New York Bankruptcy Court entered its Final Order Pursuant to 11 U.S.C. §§ 105 and 361, 362, 363 and 364 and Bankruptcy Rule 4001: (I) Authorizing Debtor to Obtain Secured Post-Petition Financing; (II) Authorizing Debtor to Use Cash Collateral; (III) Modifying the Automatic Stay; (IV) Granting Adequate Protection; and (V) Granting Related Relief (the "DIP Order").

K.     WHEREAS there are various disputes between the Debtor Parties and the Dunmore Parties, and each of them, regarding the alleged balance of the Loan, Dunmore's alleged offset rights and the nature, extent and validity of any alleged security interest in favor of Dunmore Homes and/or DHI in and to the Refund.

L.     WHEREAS, there is presently pending before this Court an adversary proceeding by Dunmore against Dunmore Homes and DHI, bearing Case No. 08-02313 (the "Adversary Proceeding"), which seeks, *inter alia*, a determination of the amount of the Loan balance and the extent of any security interest in the Refund, and to the extent such security interest(s) are determined to be valid and enforceable, the secured claimants' relative priorities with respect to the Refund. In addition, Dunmore has sought a determination of his offset rights, if any, with respect to the Loan balance by virtue of Dunmore's potential and actual liability as a guarantor of, and also a co-debtor along with, Dunmore Homes and/or DHI.

M.    WHEREAS, the Debtor Parties contend that Dunmore Homes and DHI have claims against Dunmore for, *inter alia,* preferential and fraudulent transfers based upon transactions entered into between the Parties and distributions made to Dunmore by the Debtor Parties (the "Debtor Parties' Claims"). Similarly, Dunmore contends that if Dunmore were to commence a bankruptcy case, Dunmore has claims against the Debtor Parties for, *inter alia,* preferential transfers and fraudulent transfers based upon transactions entered into between the Parties and distributions made to the Debtor Parties by Dunmore (the "Dunmore Parties' Claims").

N.    WHEREAS, Dunmore contends that, if Dunmore were to have filed his own bankruptcy case on or before September 9, 2008, Dunmore would have certain rights, claims and defenses pursuant to, *inter alia,* Chapter 5 of Title 11 of the Bankruptcy Code (the "Bankruptcy Claims"). Dunmore Homes and DHI dispute this contention. However, on September 9, 2008, the Parties entered into that certain Stipulation for Tolling of Claim Periods relative to the Bankruptcy Claims (the "Stipulation for Tolling of Claims").

O.    WHEREAS, the Parties wish to avoid further and costly litigation with respect to the Adversary Proceeding, the Debtor Parties' Claims, the Dunmore Parties' Claims and the Bankruptcy Claims, and have engaged in negotiations regarding the consensual resolution thereof.

As a result of these negotiations and in light of the foregoing stated intent, which each Party expressly acknowledges, the Parties have agreed to enter into this Agreement.

## AGREEMENT

NOW, THEREFORE, for mutual consideration, the sufficiency of which is hereby acknowledged (including the terms, provisions, conditions, agreements, warranties and

representations herein contained), Dunmore Homes, the DHI Trustee, Dunmore and the Dunmore Trustee, along with the Liquidation Trustee, as successor in interest to Dunmore Homes, each intending to be legally bound, agree, subject to approval of the Agreement by the California Bankruptcy Court, as follows:

1.     <u>Recitals</u>. The recitals to this Agreement are incorporated into and made a substantive part of this Agreement.

2.     <u>Loan Balance.</u> The remaining balance owning on the Loan to Dunmore Homes is the principal sum of $9,919,000.00 (the "Loan Balance").

3.     <u>Source of the Settlement Funds</u>. The source of the settlement funds under this Agreement will be from the federal tax return filed by Dunmore in the sum of $12,819,000 (the "Tax Refund").

4.     <u>Settlement Payment</u>. Once priority of any security interest in and to the Tax Refund is determined by a Court of competent jurisdiction, then the Settlement Funds shall be paid as follows:

    a.     If the Debtor Parties, or any of them, are determined to a have a lien of first priority in and to the Tax Refund, then when the Tax Refund is disbursed, the Debtor Parties shall receive the sum of up to $9,919,000 in satisfaction of the Loan Balance, of which (i) the first $6,662,000 shall be retained by the Debtor Parties; and (ii) the remaining sums shall be distributed to Affinity Bank and JMP Securities in satisfaction of their offsets against the Loan as follows: (a) if the total sum of the Tax Refund is $12,819,000, then $1,507,000 to Affinity Bank and $1,750,000 to JMP Securities; and (b) if the total sum of the Tax Refund is less than $12,819,00, but more than $6,662,000, then to Affinity Bank and JMP Securities, in amounts

equal amounts. Any amount of the Tax Refund in excess of $9,919,000 shall be subject to any security interests junior to the security interest held by the Debtor Parties.

      b.    If the Debtor Parties, or any of them, are not determined to have a lien of first priority in and to the Tax Refund, then when the Tax Refund is disbursed, any recovery by the Debtor Parties from the Tax Refund after satisfaction of any senior liens, shall be as follows, provided that the Tax Refund is in a sum which is at least 95% of the $12,819,000: (i) 80% of the recovery to the Debtor Parties; and (ii) 20% of the recovery to Affinity Bank and JMP Securities, to be divided in equal portions, but not to exceed the sums provided in paragraph 4(a) hereinabove.

     5.    **Additional Consideration by Dunmore**. In addition to those payments made to the Debtor Parties from the Tax Refund as set forth in paragraph 4 hereinabove, on the Effective Date (as defined herein), Dunmore shall pay to the DHI Trustee the sum of $50,000 of which $25,000 shall be paid by third parties and not the Dunmore Parties. If this Agreement is deemed null and void pursuant to paragraphs 6 or 7 herein, then DHI shall immediately return the $50,000 to counsel for Dunmore.

     6.    **Effective Date of Debtor Parties' Mutual General Release**. The Debtor Parties' Mutual General Releases of the Dunmore Parties as provided for in paragraph 8 of this Agreement shall be effective when: (a) 95 days have passed from the date this Agreement is otherwise effective *and* (b) neither of the Dunmore Parties have been the subject of a voluntary or involuntary bankruptcy petition or made an assignment for the benefit of creditors, provided however, that so long as the Parties have not breached this Agreement in the meantime, none of the Debtor Parties shall bring any action at law or in equity to recover from the Dunmore Parties on any of the claims to be released (the "Debtor Party Release Date"). If the Debtor Party

Releases do not become effective by failure of the occurrence of the events described in subparagraphs (a) and (b) herein, then the Parties shall have the right to seek to enforce any and all rights and remedies that they would have been entitled to assert with respect to such liability.

7.    <u>Possible Reinstatement of Certain Rights and Claims</u>. Should this Agreement be set aside or avoided, or if an action is commenced seeking to compel any of the Debtor Parties to return or disgorge any portion of the consideration provided to the Debtor Parties prior to the Debtor Parties Release Date, or the Tax Refund be less than sufficient to fund payment in the sum of $6,662,000 to the Debtor Parties out of its proceeds as set forth in paragraph 4(a) of this Agreement, or be less than 95% of $12,819,000 as set forth in paragraph 4(b) of this Agreement, then the Parties shall have the right to seek to enforce any and all rights and remedies that they would have been entitled to had this Agreement not been executed, subject to all claims and defenses that the other Party may be entitled to assert with respect to such liability, subject to the Stipulation for Tolling of Claims.

8.    <u>Mutual Releases of all Claims Between the Dunmore Parties and the Debtor Parties</u>: Effective on the Effective Date as to the Dunmore Parties and the Debtor Party Release Date as to the Debtor Parties, the Dunmore Parties on one hand, and the Debtor Parties on the other hand shall release each other from any and all claims, actions, causes of action of every nature, defenses, demands, costs, liabilities and obligations of every kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected, including but not limited to the Adversary Proceeding, the Debtor Parties' Claims, the Dunmore Parties' Claims and the Bankruptcy Claims, other than the obligations under this settlement Agreement (collectively the "Released Claims").

a.    Subject to the provisions of paragraph 7 hereof, on the Debtor Party Release Date, effective upon the Dunmore Parties' payment of the additional consideration set forth in paragraph 5 hereof, the Debtor Parties, and their predecessors and successors, hereby release, acquit, and forever discharge from the Released Claims any and all of the Dunmore Parties and their respective past and present predecessors, successors, affiliates, directors, officers, trustees, beneficiaries, shareholders, agents, attorneys, employees, representatives, heirs, and assigns, and any person or entity acting by, through, under, or in concert with them, including all professionals employed by the Dunmore Parties.

b.    Subject to the provisions of paragraph 6 and 7 hereof, on the Effective Date, the Dunmore Parties and their predecessors and successors, hereby release, acquit, and forever discharge from the Released Claims any and all of the Debtor Parties and the Liquidation Trustee and their respective past and present predecessors, successors, affiliates, directors, officers, trustees, beneficiaries, shareholders, agents, attorneys, employees, representatives, heirs, and assigns, and any person or entity acting by, through, under, or in concert with them, including all professionals employed by the Debtor Parties and the Liquidation Trustee.

9.    **Authority**. Each Party represents and warrants that none of the Released Claims have been assigned or transferred to any other person or entity, voluntarily or involuntarily, in whole or in part, and subject to Bankruptcy Court approval for DHI and Dunmore Homes, that such Party is fully entitled and authorized to cause the Released Claims to be released in full as provided herein.

10.    **Waiver**. It is the intention of the Parties that this Agreement shall effect a complete general release. Each Party waives the benefits of any statute or common law rule or presumption that would exclude from a release or waiver of claims any claims unknown to the

waiving Party. Without limiting the generality of the preceding sentence, the Parties acknowledge that they are familiar with, and hereby expressly, knowingly, and voluntarily waive any and all rights, protections, and benefits conferred by Section 1542 of the California Civil Code, which reads in full as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties acknowledge and agree that this waiver is an essential and material term of this Agreement and, without such a waiver, this Agreement would not be entered into. The Parties all have been advised by legal counsel with respect to such waiver, and understand and acknowledge the significance and consequences of this Agreement and of this express waiver of California Civil Code Section 1542 and any other similar statute or rule of law or similar import whether enacted or in force in California or in any other state or territory of the United States.

11. **The Obligations and Agreements of the Parties Set Forth in this Agreement Are Conditioned Upon**:

    (a)    The execution and delivery of this Agreement by each Party hereto.

    (b)    The filing of a motion by DHI and Dunmore Homes seeking Bankruptcy Court approval of the Settlement by hearing scheduled for no later than October 7, 2008.

    (c)    The entry by the Bankruptcy Court in the Bankruptcy Cases of an order approving this Agreement (the "**Approval Order**").

12. The effective date of this Agreement shall be the first business day that is at least ten (10) days after entry of the Approval Order, provided that no stay of the Approval Order is in effect and continuing (the "Effective Date").

13. **Advice of Counsel**. Each Party acknowledges and agrees that he/it has given careful thought to this Agreement, has reviewed or has had the opportunity to review this Agreement independently with legal counsel of his/its choice, and/or has the requisite experience and sophistication to understand, interpret, and agree to the particular language of the provisions in this Agreement.

14. **Construction and Interpretation**. Unless the context requires otherwise, singular nouns and pronouns used in this Agreement shall be deemed to include the plural, and pronouns of one gender shall be deemed to include the equivalent pronoun of the other gender. In the event of an ambiguity in, or controversy or claim arising out of, or relating to the interpretation, application, or enforcement of, this Agreement, the Parties agree that no one will resolve any ambiguity in, or controversy or claim arising out of, or relating to, interpretation, application, or enforcement of, this Agreement through the application of any rule providing for interpretation against the Party who causes the ambiguity to exist or against the draftsman.

15. **Waiver, Modification and Amendment**. The Parties may not waive any provision of this Agreement except by a written agreement that all of the Parties have signed. A waiver of any provision of this Agreement will not constitute a waiver of any other provision. The Parties may modify or amend this Agreement only by a written agreement that all of the Parties have signed.

16. **Titles and Captions**. The Parties have inserted the paragraph titles in this Agreement only as a matter of convenience and for reference, and the paragraph titles in no way define, limit, extend, or describe the scope of this Agreement or the intent of the Parties in including any particular provision in this Agreement.

17. **No Third-Party Beneficiaries**. This Agreement does not constitute a contract for the benefit of any third parties, any prior creditors, debtors, indemnitors or claimants of the Parties, or any nonparty.

18. **Integration**. This Agreement contains the entire agreement of the Parties with respect to the matters covered by this Agreement, and no promise or representation made by any Party or by an officer, attorney, or agent of any Party that is not expressly contained in this Agreement shall be binding or valid. Additionally, any modification of any provision of this Agreement, to be effective, must be in writing and signed by all Parties to this Agreement.

19. **Execution of Additional Documents**. The Parties agree to execute and deliver any and all additional papers, documents, instruments, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of the Parties.

20. **Execution of this Agreement**. The Parties may execute this Agreement in one or more counterparts, each of which constitutes an original, and all of which constitute one and the same Agreement. A facsimile or copy of this Agreement executed by the Parties, whether complete or in counterparts, will constitute sufficient evidence of the executed original of this Agreement for all purposes.

21. **Attorneys' Fees**. Each of the Parties hereto shall be responsible for its own attorneys' fees, expenses, and costs incurred by it through the date of this Agreement. In the event of any litigation relating to a breach of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees, expenses and costs.

22. <u>No Admissions</u>. This Agreement is intended to settle and dispose of claims, which are contested and denied. Nothing herein shall be construed as an admission by any Party of any liability of any kind to any other Party.

23. <u>Binding on Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the respective successors, predecessors, heirs, assigns, officers, directors, shareholders, employees, agents, and attorneys of the Parties to the extent provided by law, including without limitation, the Liquidation Trustee, or any trustee appointed in a subsequent chapter 7 case for either DHI or Dunmore Homes.

24. <u>Continuing Jurisdiction of California Bankruptcy Court</u>. The California Bankruptcy Court shall have exclusive jurisdiction to determine any dispute or controversy with respect to the interpretation or enforcement of this Agreement. Notwithstanding the foregoing, disputes unrelated to the interpretation or enforcement of this Agreement shall be resolved in a court of competent jurisdiction.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of September __, 2008.

DUNMORE HOMES, INC.

By: _____
Name: Michael Kane
Title: President

DHI DEVELOPMENT

_____
By: Thomas Aceituno, the Chapter 7 Trustee
of DHI Development

SIGNATURES CONTINUED ON THE NEXT PAGE

22.   **No Admissions.** This Agreement is intended to settle and dispose of claims, which are contested and denied. Nothing herein shall be construed as an admission by any Party of any liability of any kind to any other Party.

23.   **Binding on Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the respective successors, predecessors, heirs, assigns, officers, directors, shareholders, employees, agents, and attorneys of the Parties to the extent provided by law, including without limitation, the Liquidation Trustee, or any trustee appointed in a subsequent chapter 7 case for either DHI or Dunmore Homes.

24.   **Continuing Jurisdiction of California Bankruptcy Court.** The California Bankruptcy Court shall have exclusive jurisdiction to determine any dispute or controversy with respect to the interpretation or enforcement of this Agreement. Notwithstanding the foregoing, disputes unrelated to the interpretation or enforcement of this Agreement shall be resolved in a court of competent jurisdiction.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of September /6, 2008.

DUNMORE HOMES, INC.

By:
Name: Michael Kane
Title:  President

DHI DEVELOPMENT

By: Thomas Aceituno, the Chapter 7 Trustee
of DHI Development

SIGNATURES CONTINUED ON THE NEXT PAGE

12 of 13

22.     **No Admissions**.  This Agreement is intended to settle and dispose of claims, which are contested and denied.  Nothing herein shall be construed as an admission by any Party of any liability of any kind to any other Party.

23.     **Binding on Successors and Assigns**.  This Agreement shall be binding upon and inure to the benefit of the respective successors, predecessors, heirs, assigns, officers, directors, shareholders, employees, agents, and attorneys of the Parties to the extent provided by law, including without limitation, the Liquidation Trustee, or any trustee appointed in a subsequent chapter 7 case for either DHI or Dunmore Homes.

24.     **Continuing Jurisdiction of California Bankruptcy Court**.  The California Bankruptcy Court shall have exclusive jurisdiction to determine any dispute or controversy with respect to the interpretation or enforcement of this Agreement.  Notwithstanding the foregoing, disputes unrelated to the interpretation or enforcement of this Agreement shall be resolved in a court of competent jurisdiction.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of September __, 2008.

DUNMORE HOMES, INC.

By: _____
Name: Michael Kane
Title:  President

DHI DEVELOPMENT

By: Thomas Aceituno, the Chapter 7 Trustee
of DHI Development

**SIGNATURES CONTINUED ON THE NEXT PAGE**



Sidney B. Dunmore, an individual and as
Trustee of the Sid Dunmore Trust dated 2-28-03

APPROVED AS TO FORM AND CONTENT:

Dated: 9-16-08     LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.

By: _____

BETHANN R. YOUNG
GIL HOPENSTAND
Attorneys for Sidney B. Dunmore, individually and as
Trustee of the Sid Dunmore Trust, dated February 28, 2003

PACHULSKI, STANG, ZIEHL & JONES LLP

By: _____

DEBRA GRASSGREEN
MARIA BOYD
PAMELA SINGER
Attorneys for Dunmore Homes, Inc.

HUGHES & PRITCHARD

By: _____

GREGORY J. HUGHES
Attorneys for Thomas Aceituno,
Chapter 7 Trustee of DHI Development

13 of 13

<u>                                      </u>
Sidney B. Dunmore, an individual and as
Trustee of the Sid Dunmore Trust dated 2-28-03

**APPROVED AS TO FORM AND CONTENT:**

Dated:                  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.


By:_____
       BETH ANN R. YOUNG
       GIL HOPENSTAND
Attorneys for Sidney B. Dunmore, individually and as
Trustee of the Sid Dunmore Trust, dated February 28, 2003


PACHULSKI, STANG, ZIEHL & JONES LLP

By:_____
       DEBRA GRASSGREEN
       MARIA BOVE
       PAMELA SINGER
Attorneys for Dunmore Homes, Inc.


HUGHES & PRITCHARD


By:_____
       GREGORY J. HUGHES
Attorneys for Thomas Aceituno,
Chapter 7 Trustee of DHI Development

Sidney B. Dunmore, an individual and as
Trustee of the Sid Dunmore Trust dated 2-28-03

**APPROVED AS TO FORM AND CONTENT:**

Dated:                          LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.


By:_____
      BETH ANN R. YOUNG
      GIL HOPENSTAND
Attorneys for Sidney B. Dunmore, individually and as
Trustee of the Sid Dunmore Trust, dated February 28, 2003


PACHULSKI, STANG, ZIEHL & JONES LLP


By:_____
      DEBRA GRASSGREEN
      MARIA BOVE
      PAMELA SINGER
Attorneys for Dunmore Homes, Inc.


HUGHES & PRITCHARD


By:_____
      GREGORY J. HUGHES
Attorneys for Thomas Aceituno,
Chapter 7 Trustee of DHI Development